And we'd like to hear next from the SEC versus Conrad. Good morning, may it please the court. Justin Santagata of the firm of Kauffman, Semeraro, and Liebman on behalf of the appellant Thomas C. Conrad. So there are essentially two issues in this appeal. There is the appeal of the denial of the 60B5 motion, and there is the alleged breach of the cooperation agreement. Here today, your honors, I'm only going to focus mostly on the 60B5. I know that the SEC feels that the cooperation agreement should kind of wag the dog here, but if there was no wrongful denial of the 60B5, there would be no cooperation agreement to argue about. And we believe that the district court made two principal legal errors on the 60B5. And I want to start with the standard of review, because it's very important on the 60B5. We freely concede that this general standard is abuse of discretion. However, this court said in DeWorth v. Baldinger, which is cited in our brief, and the Supreme Court said in Agostini v. That's this court's own language. What was the legal error, though? I mean, so the guilty plea was vacated, but there was also a separate agreement that had been entered into freely, consensually, by your client. There were two legal errors, your honor. Let me start with the guilty plea and collateral estoppel, and then I'll turn to U.S. v. Newman. The first legal error was the district court's failure to recognize that the guilty plea and the district court's own statements to Mr. Conrad at oral argument on his motion to dismiss the civil case inexorably led to Mr. Conrad's settlement with the SEC. If you follow the timeline, your honor, Mr. Conrad pleads guilty. At the time, he has a pending motion to dismiss his civil case. He goes before Judge Rakoff. Judge Rakoff- We're not saying it was wrong, your honor, we're saying it was correct, that Mr. Conrad- and this is the legal issue, Judge Walker, that you asked about. In any event, whatever your complaint was about that, it didn't compel your client to enter into the agreement. When you follow the timeline of events, your honor, it did. The cooperation agreement was entered less than two months after- It may have caused him, it may have been a motive for it. He may have said, I don't have a chance here, because pre-Newman. But that's not the same thing as compelling him to do it. There's always a chance that things could change. In any event, he entered into it out of his own free will. Well, the language of the law, and admittedly, this is from the Fourth Circuit, your honor- He would not have been penalized, particularly, for not entering into that agreement. He would not have been penalized, that's correct, your honor, but Judge Rakoff told him he had no defense in the case. So it's unclear what Mr. Conrad would have done in that circumstance. His attorney's going to show up every day to be told that he has no defense? I mean, even if you're looking at it from a non-legal perspective, non-legal error, if you're looking for abuse of discretion, being told by the district court that you have no defense is a fact that separates you from every other 60B5 case that this court has heard. You agreed that you had no defense, or you disagreed? We agreed, your honor. We agreed that after the guilty plea, we were collaterally stopped. And that's exactly the position that the government took, excuse me, the SEC took in Newman. In this case, the SEC says that Mr. Conrad was not collaterally stopped. If you look at SA 24 of the SEC's own supplemental appendix, they took the exact opposite position. After Mr. Newman was criminally convicted, they filed a motion for summary judgment saying he was collaterally stopped. So there's an inherent contradiction now to say, well, Mr. Conrad could have litigated the case. Sure, he could have shown up for court, I can't deny that he could have done that. But he had no defense, he was told by the district court he had no defense. And there isn't a fact like that in any other 60B5 case. If you look at USB Bank of New York, which both parties agree, is the leading- How do things stand now as a result of Salmon, does he have a defense now? Yes, your honor, we believe he has several, and that's, I wouldn't be here- Why is that? After Salmon, we believe that several things would warrant a trial and would be highly disputed. Number one, the SEC's theory of the case below at the Durant and Payton trial was that the first, the insider, Michael Dallas, basically accidentally tipped the first tippee, Trent Martin. The SEC's theory was it was an accident. Salmon says that all along the line, the inside information has to be intended as a gift. So that's a contradiction with Salmon. We also, other issues- Was a lawyer working on the particular buyout, wasn't he? He was. And so he had a relationship with Martin of trusted confidence. He would talk to him about what was going on as part of their friendship and their relationship. And so Conrad was tipped by Martin. And that breached any confidentiality between Dallas and Martin, right? No, Your Honor. We disagree because if the theory is that it was an accident, then the chain falls apart. But there's a more important part to be made on that, Your Honor, in that there was evidence introduced that- The accident was what? That Dallas told Martin? Yes, yes. At a lunch meeting, basically saying, I'm stressed out, I'm working on this deal. He didn't intend to give it to Martin. And that's the key. But also, Your Honor, and some evidence was not admitted at trial, but some was. There was evidence that Dallas and Martin had an ongoing relationship where Dallas would give Martin information. And at least one text message came in- For the purpose of trading or just for the purpose of furthering their own personal relationship as friends? Martin testified at his deposition, and admittedly this was not all admitted at trial. But at his deposition he testified that he believed, truly, that Dallas was giving the information to trade on. And at least one text message came in about this deal, where Martin told Dallas that he was going to trade on the SPS Inc stock. He actually said, I'm going to hit that stock, I reckon. That text message came in. So that's also a viable defense, Your Honor. And the final viable defense at trial is remarkably what Mr. Conrad said at his plea allocution. And we would submit to you that this is another fact that differentiates this 60B5 case from any other. This is a pretty extraordinary fact. At his plea allocution, Mr. Conrad says, yes, I plead to the elements of insider trading, but I didn't know the nature of the relationship between Dallas and Martin, and I didn't know the nature of the benefit exchange. He said that before Newman ever came out. He said that before there ever was a Newman. I mean, that's a remarkable thing to say two years ahead of time, exactly what Newman would hold. And that's also going to be one of our defenses, Your Honor, which is that Mr. Conrad didn't have the sufficient knowledge of the Dallas-Martin relationship in order to be liable for insider trading. And judge- We're not litigating cases now. My concern is this. Your client managed to get his guilty plea withdrawn, but he had this other deal. And the deal was to give him considerable consideration on how much he was going to be liable for as long as he cooperated. Now, it was in his interest to secure that benefit, and the government would have been bound by it if he had cooperated. But he breached his part of the agreement. You're saying to us that it was legal error for the district court not to realize that if the guilty plea was vacated, the civil case had to be reopened too, is that right? Yes, Your Honor, may I proceed? And where is any legal support for that? Your Honor, the issue is that the district court didn't recognize collateral estoppel at all. What the district court said- What was the decision that was reached that now had a collateral estoppel effect? When you look at Judge Rakoff's opinion, he says that Mr. Conrad chose not to contest the SEC charges on the basis of the arguments that were later adopted in Newman. That's untrue, Your Honor, because Mr. Conrad tried to contest them, and Judge Rakoff told him he was collaterally estopped. Judge Rakoff did not consider- If you wanted to press Newman-type arguments, you could have, as I said, not settled and appealed then later on when Judge Rakoff told you you couldn't try to mount that defense. That's true, Your Honor. Let me- So therefore, it is not collateral estoppel. It's absolutely collateral estoppel. We had a guilty plea by Mr. Conrad that would have forbid him from contesting any elements of insider trading. Your Honor's point about being able to participate is true. Being able to defend himself is an entirely different matter. There is no viable argument that he could defend himself from a guilty plea. The language of the Supreme Court is a guilty plea is conclusive. It's like a verdict. There's nothing left to be litigated. And if you look at the colloquy between- But the argument would have been that that allocution was not enough to support the finding in the civil case. Isn't that the argument? No, it couldn't have- Newman-based argument? But, Your Honor, that's ignoring the timeline. It couldn't have occurred. The timeline doesn't work on Your Honor's question. At that time, the allocution was sufficient. When Newman finally came out, which was nearly two years later, Newman actually said, pleading to a breach of trust and confidence, having knowledge of that- When was the trial in relation to the trial of the other two in relation to the Newman decision? The trial of the other two was approximately a year and two months after Newman came down. And why did your client go forward as if the whole agreement should have been withdrawn to testify at that trial and purport to cooperate? Because Judge Rakoff denied the 60B-5, so Mr. Conrad could not, in good faith, not participate under the cooperation agreement. So he participated, he appealed the 60B-5, and then he appealed Judge Rakoff's finding that he breached the cooperation agreement. We made the motion to abrogate the agreement prior to that trial. That's a very important point, Your Honor. This was all part of the same proceeding. Mr. Conrad did not come along two years later after the law changed. He made it almost immediately after Judge Carter in the criminal case vacated the guilty plea. Mr. Conrad made the motion in July of 2014. I'll reserve the rest of my time for rebuttal. Thank you. May it please the Court, David Lasitza for the Securities and Exchange Commission. I'll focus also on based on, but if the Court has questions about the cooperation agreement, the lack of reducing the civil penalty or the civil penalty itself, I'll be happy to entertain those. I think the fundamental problem with the 60B motion is that Conrad wants his civil judgment to be based on the collateral estoppel effect of his criminal plea, but it's not. His civil judgment was based on his consent, and this Court's decision in Bank of New York forecloses the extraordinary relief of vacatur here. I think, you know, the central ruling that they point to is a hearing on a motion to dismiss. And first of all, what Conrad did was he did not press his argument. He withdrew his motion. And if he wanted to press his argument or any argument based on Newman or any other argument in the case, then you just press on and you reach a collateral estoppel decision. Furthermore, the second point is, let's think about what would happen. This is a motion to dismiss. So the judge would, if it had been pursued, the counsel said, no, I want to press because collateral estoppel is important. I don't know. I might need it later because that might be essential to a 60B or for my client or for whatever purpose. There's a motion to dismiss that's denied. There's still no judgment based on collateral estoppel at that point. There would then have to be a summary judgment motion. Now maybe the commission brings a summary judgment motion based on collateral estoppel. Commission in those circumstances usually, it's its practice, is to bring in other evidence, undisputed evidence, so that there's two bases. There's collateral estoppel as well as marshalling of the evidence. Now that may also have happened, but we don't know because there's no collateral estoppel judgment or order. And the last thing to point out is that it's essentially impossible that it could have been solely based, a judgment could have achieved solely based on the civil claim on the collateral estoppel effect of the criminal case because Conrad did not plead guilty to his unlawful trading on June 26, 2009. He did consent eventually to the civil judgment and relief for those trades. Those are his first trades. And he's very, very clear in his allocution. He does not want to allocate to those first trades. Even if, as they point out in the reply, those were, it was an overt act as part of the conspiracy. Conrad was, he was adamant for whatever reason to not include those first trades. He allocutes to July 23rd trade, 2009, July 27th, 2009, but not that trade. So you have a judgment here in a civil case that includes relief for these trades. And the government, the SEC and the civil case would have necessarily put on evidence to establish that, or at least there would have been a fight. But whatever you would think about what the fight would be or what the collateral estoppel judgment might be, that's not what happened here. You have a consent, you have a consent agreement and you have a judgment based on that consent agreement. So that irrespective of what happens or what choices they think that they did not have to make, that they did in fact have a choice to make, there could have been, you know, it's based on under Bank of New York, the consent agreement and not the criminal plea that was vacated. Okay. I have a question about the ultimate finding that he breached his cooperation agreement. This, of course, is based on the inconsistency between his testimony and his earlier statements. And one of the things that he presses in his brief is that he wasn't prepared by the SEC to go on the stand. Did you put him on the stand unprepared? He says he was prepared to meet with you for trial preparation. You know, the preparation consisted of the SEC giving him a copy of his deposition, asked him to review it. He didn't go on the stand without meeting with him and preparing him for trial, as a lawyer would. Is that what you're telling us? I'm not sure that witnesses need to be prepared to tell the truth. I don't think they need to be prepared to be consistent with their prior testimony. I mean, he made the misstatements, Judge Rakoff made his findings, but if you think you shouldn't prepare a witness before you put him on the stand, that would be a curious trial strategy. I just think he reviewed the deposition, he had counsel, but that's the extent of it really. All right. Thank you. Mr. Santagata, you reserve some time. Thank you, Your Honor. So let me start with the lack of bargaining power that Mr. Conrad had when he entered the settlement. Yes, it's true he consented. He put his signature on the settlement. But when you look at what happened, we don't know anything about the negotiations that took place or whether there were any. If there were negotiations, the SEC could have put them in the appendix. We would have known if Mr. — I am presumably no, so I don't know what you want us to infer or not infer here. So what's the argument now? The argument is that he didn't have equal bargaining power to the parties that lost in Bank of New York or U.S. v. Schwartz, which is the case cited within Bank of New York. He didn't — you don't have to have equal bargaining power, Your Honor, but you have to have some. We don't — this looks like a form agreement by the SEC. We will proceed no further than the limited penalty if you cooperate. But as the SEC puts out in its own brief, the agreement did not, like, limit in any way Judge Rakoff's power to impose a penalty regardless if Mr. Conrad cooperated. So it was somewhat of an illusory promise. So my point is, Your Honor, when you compare the bargaining power of the parties in Bank of New York and Schwartz, Mr. Conrad is far lower on the bar. And even if Your Honor doesn't agree that we're at legal error, the sequence of events that led to Mr. Conrad's settlement is unlike any other — any other 60b-5 case. First of all, we have parallel elements. Second of all, we have the district court telling Mr. Conrad that he can't defend his case. Third of all, we have a landmark decision in Newman that comes out. After Mr. Conrad pled at his plea allocution, eventually what Newman would hold — I mean, that's a remarkable fact in and of itself. So even if the Court doesn't agree that these are purely legal errors, we have a lot of basis for abuse of discretion based on what took place over the timeline of this case. I just want to be clear. When you say Judge Rakoff told him he couldn't defend his case, that's a shorthand for he told him that he couldn't make certain arguments, right? He could have always gone to the proceeding and put the SEC to its burden of proof. It could — I mean, it's a misstatement to say Judge Rakoff told him he couldn't defend the case. He couldn't make certain arguments in light of his guilty plea. Can I answer your question, Your Honor? Yes. I don't believe it's a misstatement, Your Honor. It is shorthand. But it's not a misstatement because if you look at what occurred in this case, what would have inevitably happened is that each time Mr. Conrad's attorney below went to court to press his case, Judge Rakoff would have brought up the guilty plea. I think that's clear from the record. Yes, we have to imply it. But if you look at the record, the transcripts and what occurred, that's what would have happened. Mr. Conrad could have showed up. He could have pressed his case. And the first question out of Judge Rakoff's mouth — and he was very apt to question the witness himself — would be, Mr. Conrad, you already pled guilty to the elements of insider trading. So I think it is a little bit illusory, Your Honor, to say that he could have pressed his case. Thank you. Thank you. All right. That's the last case on our calendar. We'll take it under advisement, and we stand adjourned.